## In re ERNST.

### Patent Appeals No. 5011.

Court of Customs and Patent Appeals.
May 28, 1945.

Toulmin & Toulmin, of Dayton, Ohio (Rowan A. Greer and Duward C. Staley, both of Dayton, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting, in view of the prior art, claims 19 and 31 of appellant's application for a patent directed to a method of drawing a work piece; claims 22 to 24, 26 to 30, and 32, directed to an apparatus, having been allowed by the Primary Examiner.

The alleged invention relates to "a hydraulic multiple action automobile body press, in which, for shaping the work piece in a plurality of steps, only one power unit is required, acting all the while through the same main ram."

Rejected claims 19 and 31 read as follows:

"19. A method of drawing a work piece in a plurality of steps which comprises exerting pressure on the work piece and simultaneously preventing movement of the work piece while it is being drawn to a predetermined extent, and thereafter continuing said pressure in the same direction while yieldingly supporting said work piece.

"31. A method of drawing a work piece in a plurality of steps which comprises supporting and clamping the work piece and exerting shaping pressure thereon in one direction and on one side thereof while simultaneously preventing movement of the support for the said work piece, to thereby shape said work piece to a predetermined extent, and, following this shaping operation, continuing to exert shaping pressure on said work piece while continuing the movement of the work piece in the same direction as before while allowing said work piece gradually to recede in a continuous movement toward a stationary die, thereby causing the latter to contact said work piece on the opposite side and to shape said work piece at a portion spaced from the portion shaped during the first mentioned movement of the work piece."

The references relied upon are: Nilson et al. 1,550,387 Aug. 18, 1925; Baum 1,668,-349 May 1, 1928; Rode 1,772,914 Aug. 12, 1930.

It will be noted that of the two steps described in the appealed claims, the first is "exerting pressure on the work piece and simultaneously preventing movement of the work piece while it is being drawn to a predetermined extent," and the second is "thereafter continuing said pressure in the same direction while yieldingly supporting said work piece."

Assuming that the pressing platen is provided with punches, as described in appellant's specification, and that a work piece supported by the lower die is to be shaped

by means of the punches, the clamping platen is then firmly pressed downwardly against the work piece and the punches begin to act upon the work piece, exerting shaping pressure and drawing the work piece into the co-operating recesses in the lower die. This performance, in general, is the first working step described in the appealed claims. Due to the further downward movement of the platen, a stationary punch, reciprocally and centrally located in the bed plate of the apparatus and extending upward, has bulged out the work piece, and the second shaping operation, or working step, is thus completed.

Briefly stated and omitting references to drawings, the specification of the patent to Nilson et al. describes an apparatus for shaping a metal work piece or blank in two clearly defined steps during one cycle operation of the machine, as follows:

"The normal or initial position of the parts, that is with the die elevated and with the draw or blank holding rings in a position that their upper faces will be flush with each other and flush with the top of the forming block, it being of course understood that the fluid in the cylinders which is operating against the respective pistons is of the desired or necessary relative pressures.

"The material is then placed upon the forming block so as to extend across and rest upon the upper surfaces of the blank holding or gripping members.

"The die is then lowered and the first operation will be the shearing or cutting of the material to the proper shape by means of the cutting edges. As the die continues to descend the edge will depress the portion of the article and shape the same over the forming block and holding ring * * *. At the same time the ring will be lowered * * *. As the ring reaches the position shown, the shoulder of the die co-operates with the upper surface of the ring or member to grip the material therebetween and a further lowering of the die will depress the portion of the material in contact with the shoulders so as to bend the article over the forming block.

"This will complete the formation of the article after which the die recedes or is elevated and during this elevation the shaped article will be located in the recess in the die and will ascend therewith. At the proper time the knock out member is operated to eject the completed article."

The patent to Rode discloses that the work piece to be shaped or drawn is supported by the upper surfaces of two dies located in the bed of the double action press and embodying co-operating work gripping and shaping members. These two dies co-operate with two upper dies on the descending ram of the press. The work piece is clamped between one pair of the upper and lower dies as the ram descends and shapes the work piece over one of the two lower dies. After the work piece has thus been shaped in part by the first working step, the ram descends, and in the second working step shapes the remaining portion of the work piece over the other lower die.

The invention of Baum "relates to articles of cellulosic material and a method of manufacture, more especially of such articles formed up from paper sheets, as, for example, certain forms of bottle caps or closures." The specification discloses that the work piece is supported by the upper surface of a lower die, an upper die is then brought down against the upper face of the work piece, thus holding it in position for further forming operations, which comprise; first, exerting pressure in a downward direction against the upper face of the work piece while the lower die remains stationary, thus shaping the work piece in part. Next the lower die member is moved upwardly and the work piece is further shaped by this second operation. Next the outer die member is brought downwardly to form the outer margin of the work piece into the downwardly extending portion which bears against the outer face of the bottle pouring lip.

It will be noted in the references cited against the appealed claims that the operation of each of the patented presses discloses the shaping of the work piece to a predetermined extent by exerting pressure in a plurality of steps on the work piece and continuing said pressure on the work piece as called for by appellant's claims.

Claim 19, which was described by the examiner as being "quite broad," recites a method of drawing a work piece which comprises "simultaneously preventing movement of the work piece while it is being drawn to a predetermined extent," which means that the bodily movement of the work piece is prevented, and "continuing said pressure in the same direction while yieldingly supporting said work piece."

The elements which prevent movement in the work sheet while it is being drawn are the forming block and the die in Nilson et al., while in Rode and Baum, movement of the work sheet is prevented by holding or gripping members. Continued pressure in the same direction is clearly defined in the descending pressure against the work piece in both Nilson et al. and Rode, and the work piece is yieldingly supported in the same sense in the cited references as it is in the appellant's specification. As pointed out in the brief of the Solicitor for the Patent Office, "the entire work piece cannot be yieldingly supported, or no drawing would take place."

Claim 31 has been rejected, among other reasons, as unpatentable over Baum. Baum specifies a method for clamping the work piece while shaping pressure is exerted in one direction and during this operation the supporting die remains stationary. Afterwards, pressure is continued to be exerted, and in the second shaping movement, the lower die is moved toward the work piece. If Baum's second step were performed by the descending pressure of the ram instead of moving the lower die upward, appellant's claim 31 would be fully anticipated. This change in method would be obvious to one skilled in the art and therefore would not involve invention. As pointed out in the decision of the Board of Appeals, "while it might be advantageous in heavy presses to have movement in one direction of the moving parts, this feature became rather arbitrary when applied to method claims, and where there is nothing in the claim to indicate that operations are applied to any particular size of machine or kind of stock."

Appellant insists that the references relate to patents for devices and not to patents for processes and therefore it was not proper to employ such references in rejecting the appealed claims. In support of this contention, appellant cites the rule of law as stated in Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968. The rule of law upon which appellant relies does not apply, however, where the previously patented devices in their normal and usual operation will perform the function which an appellant claims in a subsequent application for a process patent. In re Ackenback, 45 F.2d 437, 18 C.C.P.A.,Patents, 769, 772. As hereinbefore described, in their normal and usual operation, the presses disclosed in the cited references perform or will perform the function which appellant claims.

It is our opinion that appellant has not produced a patentably new method of performing work in connection with the shaping of a work piece in an automobile body press.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.